**O**

# United States District Court
# Central District of California

| | |
|---|---|
| DOLORES MARTINEZ,<br><br>               Plaintiff,<br><br>    v.<br><br>NAVY LEAGUE OF THE UNITED<br>STATES,<br><br>               Defendant. | Case No. 2:13-cv-5533-ODW(FFMx)<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT [66]** |

## I. INTRODUCTION

On July 31, 2011, Plaintiff Dolores Martinez attended Los Angeles Navy Week in San Pedro, California, where she tripped over a fence. Martinez—a pro se litigant—sued Defendant Navy League of the United States for negligence. Navy League now moves for summary judgment, arguing that it did not have control over or possess of the premises where the accident occurred, and thus owed no duty of care to Martinez. For the reasons discussed below, the Court **GRANTS** Navy League's Motion for Summary Judgment. (ECF No. 66.)

## II. FACTUAL BACKGROUND

The Navy League is a civilian-operated nonprofit organization that operates independently from the United States Navy. (Ivey Decl. ¶ 3.)[1] The Navy League's

---

[1] Ivey has acted as National Director of the Navy League for the past twelve years, and is personally involved in and familiar with the Navy League's local activities. (Ivey Decl. ¶¶ 1–2.)

mission is "(1) to enhance the morale of active-duty personnel and their families; (2) to inform Congress and the American public of the importance of strong sea services; (3) and to support youth through programs . . . that expose young people to the values of our sea service." (*Id.*) To these ends, and in anticipation of the 2011 Los Angeles Navy Week event, Ivey procured a "temporary entry and use permit on behalf of the Navy League as licensee from the City of Los Angeles for Berth 46 and adjacent parking areas." (*Id.* ¶ 7.) Ivey then gave the license to the United States Navy "so that it could host the Navy Week event," which allows civilians to board and tour naval vessels. (*Id.* ¶ 9.)

Upon receiving the license, the U.S. Navy took possession of Berth 46 and controlled "every facet of set up, security, planning and control, and maintained security at all times." (*Id.* ¶¶ 10–11.) The Navy League took no part in the planning or design, hiring or securing of contractors, or any other operational aspect of Navy Week. (*Id.* ¶¶ 12–13.) The U.S. Navy hired Ship Supply of Florida ("Ship Supply") as its agent. (Genatempo Decl. Ex. B 6:11–24) Under the direction of Christian Giannakopoulos, Ship Supply's President, Ship Supply made the arrangements for the equipment needed for Navy Week. (*Id.* at 17:25–18:10.) Specifically, Lieutenant Commander Homer Buen of the U.S. Navy directed Ship Supply to erect a temporary fence at Berth 46. (*Id.* at 8:16–11:21, Ex. 2–3.) Ship Supply contracted with Event Production Services to build the temporary fencing. (*Id.* at 12:8–20.)

Navy League did not participate in Navy Week in an official capacity after it turned the license over to the U.S. Navy. (Ivey Decl. ¶ 15.) It also did not send any representatives to Berth 46 during Navy Week, although some members may have attended in a personal capacity. (*Id.*)

Martinez alleges that on July 31, 2011, she and her grandson attended Los Angeles Navy Week in San Pedro, California. (SAC ¶ 3(E).) After passing through a security checkpoint, Martinez walked inside a fenced-off corridor toward the U.S.S. Abraham Lincoln, among a crowd of people. (*Id.*) Martinez was walking along the

1    left edge of the fence when she tripped over a metal bracket used to stabilize the
2    fence.  (*Id.*)  She injured her right knee and left elbow.  Military personnel responded
3    to her accident, ultimately taking her to the first aid station on board the U.S.S.
4    Abraham Lincoln.  (*Id.* at 6; Genatempo Decl. Ex. A. 58:13–59:25, 63:4–6.)

5         On July 31, 2013, Martinez initiated this action against Navy League, alleging
6    violations of various California statutes.  (ECF No. 1.)  Martinez is unrepresented by
7    counsel.  After three motions to dismiss (ECF Nos. 8, 24, 38) and two amended
8    complaints (ECF Nos. 16, 37), the Court found that Martinez met the minimum
9    threshold required to state a claim for simple negligence in the Second Amended
10   Complaint ("SAC").

11        On June 12, 2014, Navy League filed this Motion for Summary Judgment, or in
12   the alternative, Summary Adjudication.  (ECF No. 66.)  Martinez timely filed a
13   "Verified L.R. 7-9 Opposing Papers to Motion for Summary Judgment as to Second
14   Amended Complaint," but submitted no evidence in her Opposition.  (ECF No. 89.)
15   Martinez also makes reference to an amended complaint, which the Court denied her
16   leave to file during the pendency of this Motion.  (ECF Nos. 86, 87.)  In addition,
17   Martinez filed Amended Opposing Papers after the deadline to oppose the Motion.
18   (ECF Nos. 95, 96.)  A hearing was held on August 18, 2014, and the Motion for
19   Summary Judgment is now before the Court for decision.

20                           **III.   LEGAL STANDARD**

21        Summary judgment should be granted if there are no genuine issues of material
22   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.
23   P. 56(c).  The moving party bears the initial burden of establishing the absence of a
24   genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
25   Once the moving party has met its burden, the nonmoving party must go beyond the
26   pleadings and identify specific facts through admissible evidence that show a genuine
27   issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in
28   affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

1   summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th
2   Cir. 1979).

3       A genuine issue of material fact must be more than a scintilla of evidence, or
4   evidence that is merely colorable or not significantly probative.  *Addisu v. Fred*
5   *Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the
6   resolution of that fact might affect the outcome of the suit under the governing law.
7   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if
8   the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving
9   party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts
10  are required to view the facts and draw reasonable inferences in the light most
11  favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

12                          **IV.   DISCUSSION**

13      Navy League moves the Court for summary judgment on multiple grounds.
14  First, Navy League argues that no genuine issue of material fact exists with regard to
15  whether it owed a duty of due care to Martinez, as there is no evidence that Navy
16  League had possession or control over Berth 46.  Thus, Martinez's negligence claim
17  necessarily fails.   Navy League also argues that Martinez cannot demonstrate that
18  Navy League was on notice of any dangerous condition at Berth 46, or that Navy
19  League had any duty to protect Martinez from an open and obvious condition.
20  Finally, Navy League argues that Martinez's claim is barred by California Civil Code
21  section 846, which grants broad immunity to defendants with certain interests in
22  property, including as licensees.  Because the Court finds that summary judgment is
23  properly based on Navy League's first argument—lack of possession or control of the
24  premises—the Court declines to address Navy League's other arguments.[2]

25      In order to establish a negligence claim, a plaintiff must show that the defendant
26  owed the plaintiff a duty of due care; the defendant breached that duty; the breach

27  ---
[2] Navy League has filed a Request for Judicial Notice in relation to this Motion.  (ECF No. 66-6).
28  The Court **DENIES** the Request because the documents are already part of the record in this case
    and the Court may refer to docket entries in this case without taking judicial notice.

1  caused the plaintiff injury; and that plaintiff is entitled to damages.  *See, e.g.*, *Ortega*
2  *v. Kmart* 26 Cal.4th 1200, 1205 (2001).

3      Martinez must demonstrate the first element of her negligence claim—that
4  Navy League owed her a duty of due care—in order to proceed with the remainder of
5  her negligence claim.  To establish that a party had a duty of due care in premises-
6  liability cases, courts require a showing that the party had control and supervision over
7  the premises.  *Sprecher v. Adamson Cos.*, 30 Cal.3d 358, 368–369 (1981).  But as
8  Navy League argues, it exercised no control or supervision over Berth 46.  Grant Ivey,
9  a director of Navy League who personally procured the license for Berth 46,
10 unequivocally denies any further involvement in the planning, control, or supervision
11 of Navy Week beyond procuring the license and handing it over to the U.S. Navy.
12 (Ivey Decl. ¶¶ 10–13.)

13      Further, Christian Giannakopoulos, President of Ship Supply, Inc., has sworn
14 under oath that he received his directive to build the fence in question from Homer
15 Buen, a Lieutenant Commander in the U.S. Navy, after Ship Supply won a bid to the
16 U.S. Navy for the contract for Navy Week.  (Genatempo Decl. Ex. B 6:11–25, 8:13–
17 23, 9:2–8, 1: 10–11:21, Ex. 2–3.)  Upon receiving this instruction, Ship Supply
18 contracted with Event Production Services to build the fence.  (*Id.* at 12:8–20.)
19 Further, Giannakopoulos did not recall having any contact with anyone from Navy
20 League during Navy Week, nor did he ever speak with anyone from Navy League
21 about Martinez's fall.  (*Id.* at 17:11–25.)

22      In addition, as the court in *Alcarez v. Vece*, 14 Cal.4th 1149, 1159 (1997),
23 explained, possession of property amounts to occupancy plus control, and that in
24 determining who is "vulnerable to a verdict, control dominates over title.  The crucial
25 element is control."  Although the Navy League procured a license for use of Berth
26 46, the Navy League did not actually control the premises.  The Navy League was
27 simply the licensee on paper because it gave the license and any control over the
28 premises to the U.S. Navy.  The U.S Navy subsequently contracted with Ship Supply

and Event Production Services, as discussed above, to prepare the premises for the Navy Week event.

At summary judgment, Martinez must show that Navy League had control of Berth 46 by going beyond the pleadings and identifying specific facts through admissible evidence that show a genuine issue for trial. *Celotex*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c). Martinez has failed to do so.

First, Martinez's Opposition to Navy League's Motion simply refers to an amended complaint, which the Court denied her leave to file.[3]  (ECF Nos. 86, 87.) She provides no evidence for the Court to analyze in the Opposition. (*See generally*, Opp'n.)  Martinez's SAC also contains nothing to rebut Navy Week's evidence, and Martinez is required to adduce evidence beyond the pleadings. *Celotex*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c).  In addition, Martinez's Amended Opposing Papers do nothing to further her case. (*See* ECF Nos. 95, 96.)  Martinez once again refers to allegations in the pleadings and produces no admissible evidence.[4]

Furthermore, as Martinez's deposition testimony reveals, she bases the allegations in her SAC on assumptions she made from clothing worn by attendees at the event. (Genatempo Decl. Ex. A 32:1–10 ("[I]n my research, I—I did discover that members of the U.S. Navy League wear their paraphernalia, if you will, as I described.  You know, the hats with the buttons and the different shirts or jackets that they might wear proudly displaying their membership, I guess."); 37:14–18 ("And as I said earlier, in my research on the Navy League, that's what I generally found out. Generally members will wear those sorts of things. And that's how I made the assumption that I probably did talk to Navy League Members.").)  Martinez then testifies that she deduced that the Navy League was responsible for maintaining Berth

---

[3] Martinez sought leave to file a Third Amended Complaint on July 25, 2014.  The Court denied leave to amend because she had ample opportunity to state a claim in her three previous complaints, and she only proposed to add a claim for punitive damages without any legal or factual basis.

[4] Attached to Martinez's Amended Opposing Papers are two newspaper articles that appear to be about the Navy Week event.  Both articles run afoul of the Federal Rules of Evidence, but even if admissible, the articles do not create a genuine issue of material fact.

46 based on this clothing.  (Genatempo Decl. Ex. A 53:1–17 "[Navy League was] the organizers of the event, the hosts of the event.  And that's why my belief is that.").)  Martinez has performed little to no discovery, and accordingly presents no additional evidence to the Court in support of her allegations.  (ECF No. 88-1 ¶ 8.)

Finally, the Court considers the scant documentary evidence Martinez has produced as attachments to her numerous filings in this case, and finds that the documents offer little support to her allegations that Navy League had supervision and control over Berth 46.  For example, attached to the SAC is a letter from The Cincinnati Insurance Companies which Martinez alleges demonstrates that  Navy League was a sponsor of Navy Week.  (SAC Ex. 6.)  However, a declaration of sponsorship by an insurer does not amount to evidence establishing actual control or possession—if it did, every sponsor of a sporting event could be held liable for any injury occurring in a sporting arena.  Moreover, the letter actually states that the insurer needed more information before making any further conclusions about coverage.  (*Id.*)  Notwithstanding the obvious evidentiary issues, the letter hardly demonstrates possession or control over the property at the time of Martinez's injury and does not create a genuine issue of material fact.

Martinez also tried to submit an additional exhibit in her proposed Third Amended Complaint.  Even if the Court ignored the glaring evidentiary issues,  the exhibit is merely Navy League's insurance policy with an arrow pointing to a line on its endorsements schedule which reads "Additional Insured – Owners, Lessees or Contractors – Scheduled."  (ECF No. 87-1, Ex. 7.)  There is no indication that Navy League in fact contracted with any other organization, or that it owned Berth 46, or that it had any responsibility for Berth 46 whatsoever.  (*Id.*)  Martinez further explains in deposition testimony that a bystander saw her accident and ran back to the security checkpoint to get help and returned with military personnel, not a member of the Navy League.  (*Id.* at 58:24–59:2.)  According to her deposition testimony, at every stage from arrival at Berth 46 through ending up in the infirmary on board the U.S.S.

1    Abraham Lincoln, Martinez was assisted by military personnel.  (*Id.* at 25:25–29:25,

2    58:17–59:25.)   In addition, Martinez states in deposition testimony that she did not

3    know who was responsible for advertising Navy Week, and that she "assumed" it was

4    Navy League.  (*Id.* at 19:1–20:8.)

5          The Court simply may not make the inference that Navy League controlled or

6    supervised Berth 46 given Navy League's ample evidence to the contrary, including

7    Martinez's own deposition testimony.  Accordingly, the Court finds that Navy League

8    owed no duty to Martinez, as it did not have possession or control over Berth 46 at the

9    time of Martinez's injury.  Therefore, Martinez's negligence claim fails as a matter of

10   law and summary judgment in favor of Navy League is proper.

### V.    CONCLUSION

12         The Court **GRANTS** Martinez's Application for Extension of Time to File

13   Amended Opposing Papers.  (ECF No. 94.)  The Court also **DENIES** Martinez's Rule

14   60(b) Motion to reconsider the Court's denial of leave to file a Third Amended

15   Complaint.  (ECF No. 98.)

16         For the reasons discussed above, taking into consideration all of the papers filed

17   by Martinez in response to the Motion and all arguments made at the hearing, the

18   Court **GRANTS** Defendant's Motion for Summary Judgment.  (ECF No. 66.)  A

19   separate judgment will issue.

20         **IT IS SO ORDERED.**

22         August 18, 2014

24         _____

25                **OTIS D. WRIGHT, II**
            **UNITED STATES DISTRICT JUDGE**